UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| MARION E. GILLIAM,<br><br>    Plaintiff,<br><br>v.<br><br>U.S. STEEL CORPORATION,<br><br>    Defendant. | Case No. _____<br><br>**JURY TRIAL DEMANDED** |

## COMPLAINT

NOW COMES Plaintiff, Marion Gilliam, by and through his attorney, Kayla H. Drum, Esquire, and files this Complaint alleging as follows:

### I. Nature of the Action

1. Plaintiff brings this Complaint to recover damages under the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101 *et seq.*, similar provisions under the Pennsylvania Human Relations Act ("PHRA") 43 P.S. § 955 *et seq,* and the Family Medical Leave Act ("FMLA") 29 U.S.C. § 2601 et seq. Plaintiff has a disability under the ADA and the PHRA and was harassed and discriminated against due to his disabilities.

### II. Jurisdiction and Venue

2. This action arises under the ADA, 42 U.S.C. § 12101 *et seq*. and FMLA 29 U.S.C. § 2601 et seq. this Court has jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1331.

3.	This Court has supplemental jurisdiction over Plaintiff's discrimination claims pursuant to 28 U.S.C. § 1367(a).

4.	A substantial part of the events or omissions giving rise to the claims occurred in Western Pennsylvania, and, therefore, this action is within the jurisdiction of the United States District Court for the Western District of Pennsylvania and the venue is proper pursuant to 28 U.S.C. § 1391(b).

5.	Plaintiff filed a charge with the Equal Employment Opportunity Commission (EEOC), which issued him a right to sue letter on September 18, 2017.

### III. Parties

6.	Plaintiff, Marion E. Gilliam ("Plaintiff"), is an adult individual residing at 96 Saint John's Rd., Weirton, WV 26062.

7.	Defendant, U.S. Steel Corporation ("Defendant"), is a business with a location at 400 State St., Clairton, PA 15025.

### IV. Facts

8.	Plaintiff began his employment on or about October 7, 2013.

9.	Plaintiff held the position of utility person.

10.	Plaintiff suffers from the disability of bipolar disorder.

11.	Plaintiff treats his disability with medication and counseling.

12.	Plaintiff's immediate supervisor for Defendant was Joe Guynn ("Mr. Guynn").

13.	Plaintiff was approved for FMLA in August 2016 for his disability.

14.	Plaintiff's accommodations in relation to his disability was to work no more than forty hours per week with no double shifts.

15. Plaintiff lives ninety minutes from Defendant's location and due to his medication requires time to sleep.

16. Lack of sleep may cause stress and bring on a manic episode.

17. Plaintiff was not permitted by Defendant to use FMLA time in order to attend doctor's appointments.

18. Plaintiff was told by Mr. Guynn and the Plant Medical Team for Defendant that he was not permitted to take his medication while on Defendant's property.

19. Plaintiff is prescribed Depakote to treat his disability.

20. Plaintiff did provide Defendant with documentation from his prescribing physician that there were no adverse effects of Plaintiff taking his medication while working.

21. On October 6, 2016 Plaintiff had his annual physical at Defendant's medical facility in the plant.

22. Plaintiff was rated "MA" by CRNP Rhonda.

23. Plaintiff asked her what that meant, and she stated that it is because Plaintiff's vision and depth perception is "not good" and told Plaintiff that once his eye doctor wrote a release he would get the MA rating lifted.

24. Plaintiff was, in addition, told to bring in an updated doctor's note for his forty-hour work week and no double shifts.

25. Plaintiff followed up with his eye doctor who provided a statement that his vision corrected is right eye, 20/20 and left eye, 20/50. Plaintiff's depth perception was 140 seconds of arc on the Stereo Fly test.

26. On November 7, 2016 Plaintiff provided his eye doctor's documentation to plant medical along with his updated restriction from his psychologist.

27. Plaintiff was told that he would not be allowed his forty-hour work week because of the schedule that he was on.

28. His schedule at that time required him to work forty-eight hours every other week, in violation of his restrictions.

29. Plaintiff was further informed that since his vision was 20/50 in his left eye, he would not be permitted to change jobs.

30. Plaintiff requested documentation on that policy and was not provided.

31. Plaintiff received documentation from plant medical, which was altered, that stated he was permitted to work forty-eight hours per week and no double shifts, per managers Dan Curmer ("Mr. Curmer") and Mr. Guynn.

32. Plaintiff filed a grievance through his union for not being permitted to take a bid and change his position because of the vision rule that no one would provide him documentation of.

33. In December 2016, Plaintiff complained to Mr. Guynn about not being permitted to move up or train on machines despite passing his vision test.

34. Mr. Guynn replied that it "wasn't the vision test, it was Plaintiff's disability."

35. Plaintiff had been cleared to work with his disability since he started with Defendant.

36. On December 15, 2016 Plaintiff returned to plant medical and was given a vision test again by Rhonda, which he passed.

37. A male nurse entered and told Plaintiff to "don't get happy yet. She (Rhonda) is planning on not letting you bid a job. She just got off the phone with your manager, Joe Guynn."

38. The male nurse left and Rhonda returned. She told Plaintiff "you did pass the vision test but because of your restricted work hours and because you are bipolar, they will not let you change jobs or run machines."

39. Rhonda gave Plaintiff documentation to take to his PCP and psychologist requesting an examination prior to Defendant considering allowing Plaintiff a bid for a new position.

40. Plaintiff asked if everyone had to go through this process to change jobs and Rhonda said "no, it's a process for you because of your disability. You are a liability and we do not have to listen to your doctor's advice, we just consider it."

41. Shortly after that conversation, Plaintiff contacted the EEOC to file a Charge of Discrimination.

42. On December 21, 2016 manager Paul Caepoke ("Mr. Caepoke") was covering Plaintiff's crew.

43. There was an extra individual on that shift and Plaintiff requested to work labor.

44. Mr. Caepoke told Plaintiff "I need someone with a fucking brain to do this job" while in a crew safety meeting with twelve other individuals present.

45. Plaintiff filed a union grievance the following day in regard to Mr. Caepoke's conduct and contacted Manager Matt Delibro ("Mr. Delibro") to inform him of Mr. Caepoke's conduct.

46. Plaintiff also requested a meeting with management and human resources as he believed Mr. Delibro's conduct was in retaliation for him opening an EEOC claim and making a civil rights grievance.

47. Mr. Delibro stated that the meeting would be the following week.

48. The day of the meeting, January 4, 2017, Plaintiff was informed by his union representative that Mr. Delibro had called off the meeting because he did not know he needed to have human resources present. Mr. Delibro further stated that he wanted to reschedule the meeting for Friday so that Mr. Caepoke was not there.

49. Plaintiff stated that he feels the company is not taking his issues seriously since Mr. Delibro did not want Mr. Caepoke present. Plaintiff insisted that the meeting take place the next day.

50. Plaintiff was told that it was "up to management" and they would "get back to him" in regard to a meeting date.

51. That same evening, Matt Larkin ("Mr. Larkin"), an individual on Mr. Caepoke's crew asked Plaintiff to "drop the case on Paul,"

52. Plaintiff stated he was not dropping it, and went to his assigned work area.

53. Several hours later Mr. Larkin approached Plaintiff again and flexed his body as though he was going to hit Plaintiff.

54. Plaintiff went to supervisor Aaron Troutman and told him what had occurred with Mr. Larkin, and stated that, for his own safety, he is ending his employment.

55. Plaintiff went to personnel the following day, January 5, 2017 and reported all of the harassment and discrimination which had occurred.

56. Plaintiff stated that he was suffering from a hostile work environment and wanted to resign.

57. Plaintiff also opened an ethics complaint with a third party against Defendant the day of his resignation.

## V. Allegations

### Count I
### Disability Discrimination
### ADA, 42 U.S.C. § 12101 *et seq.*

58. The preceding paragraphs are incorporated herein as if set forth at length.

59. Plaintiff is an Employee in relation to the ADA.

60. Defendant is an Employer in relation to the ADA.

61. Plaintiff was fully qualified to perform all aspects of his job.

62. Plaintiff has a "disability" as defined under the ADA because he suffers from bipolar disorder.

63. Plaintiff informed Defendant of his disability.

64. Plaintiff was discriminated against because of his disability in the following ways:

   a. Plaintiff was not permitted to take his prescribed medication at work to treat his disability despite providing documentation that his medication had no adverse effects;

   b. Plaintiff was told by numerous individuals that his disability was the reason he could not bid on positions to move to different departments for Defendant;

   c. Plaintiff was harassed in relation to alleged vision issues to keep Plaintiff from being permitted to move to other departments;

   d. Plaintiff was harassed and physically threatened in retaliation for complaining about the discrimination to agencies as well as management for Defendant;

   e. Plaintiff was forced to resign from his position due to the disability discrimination and retaliation

65. Plaintiff was damaged by Defendant's actions.

**Count II**
**Disability Discrimination**
**PHRA 43 P.S. § 955** *et seq.*

66. The preceding paragraphs are incorporated herein as if set forth at length.

67. Plaintiff is an Employee in relation to the PHRA.

68. Defendant is an Employer in relation to the PHRA.

69. Plaintiff was fully qualified to perform all aspects of his job.

70. Plaintiff has a "disability" as defined under the PHRA because he suffers from bipolar disorder.

71. Plaintiff informed Defendant of his disability.

72. Plaintiff was discriminated against because of his disability in the following ways:

    a. Plaintiff was not permitted to take his prescribed medication at work to treat his disability despite providing documentation that his medication had no adverse effects;

    b. Plaintiff was told by numerous individuals that his disability was the reason he could not bid on positions to move to different departments for Defendant;

    c. Plaintiff was harassed in relation to alleged vision issues to keep Plaintiff from being permitted to move to other departments;

    d. Plaintiff was harassed and physically threatened in retaliation for complaining about the discrimination to agencies as well as management for Defendant;

    e. Plaintiff was forced to resign from his position due to the disability discrimination and retaliation

73. Plaintiff was damaged by Defendant's Actions.

**Count III**
**Retaliation**
**ADA, 42 U.S.C. § 12101** *et seq.*

74. The preceding paragraphs are incorporated herein as if set forth at length.

75. Plaintiff is an Employee in relation to the ADA.

76. Defendant is an Employer in relation to the ADA.

77. Plaintiff was fully qualified to perform all aspects of his job.

78. Plaintiff has a "disability" as defined under the ADA because he suffers from bipolar disorder.

79. Plaintiff filed complaints with managers, Human Resources and filed grievances in regard to the disability discrimination he suffered by Defendant.

80. Defendant escalated the harassment of Plaintiff after he filed formal complaints objecting to the disability discrimination.

81. Plaintiff was forced to resign because of the escalated and retaliatory harassment.

82. Plaintiff was damaged by Defendant's actions.

**Count IV**
**Retaliation**
**PHRA 43 P.S. § 955** *et seq*.

83. The preceding paragraphs are incorporated herein as if set forth at length.

84. Plaintiff is an Employee in relation to the PHRA.

85. Defendant is an Employer in relation to the PHRA.

86. Plaintiff was fully qualified to perform all aspects of his job.

87. Plaintiff has a "disability" as defined under the PHRA because he suffers from bipolar disorder.

88. Plaintiff filed complaints with managers, Human Resources and filed grievances in regard to the disability discrimination he suffered by Defendant.

89. Defendant escalated the harassment of Plaintiff after he filed formal complaints objecting to the disability discrimination.

90. Plaintiff was forced to resign because of the escalated and retaliatory harassment.

91. Plaintiff was damaged by Defendant's actions.

### Count V
### Constructive Discharge
### ADA, 42 U.S.C. § 12101 *et seq.*

92. The preceding paragraphs are incorporated herein as if set forth at length.

93. Plaintiff is an Employee in relation to the ADA.

94. Defendant is an Employer in relation to the ADA.

95. Plaintiff was fully qualified to perform all aspects of his job.

96. Plaintiff has a "disability" as defined under the ADA because he suffers from bipolar disorder.

97. Plaintiff was harassed and retaliated against after complaining about the discriminatory treatment.

98. Defendant's harassment escalated.

99. Plaintiff was forced to resign from his position due to the harassment and discrimination.

100. Plaintiff was damaged by Defendant's actions.

### Count VI
### Constructive Discharge
### PHRA 43 P.S. § 955 *et seq*.

101. The preceding paragraphs are incorporated herein as if set forth at length.

102. Plaintiff is an Employee in relation to the PHRA.

103. Defendant is an Employer in relation to the PHRA.

104. Plaintiff was fully qualified to perform all aspects of his job.

105. Plaintiff has a "disability" as defined under the PHRA because he suffers from bipolar disorder.

106. Plaintiff was harassed and retaliated against after complaining about the discriminatory treatment by Defendant.

107. Defendant's harassment escalated.

108. Plaintiff was forced to resign from his position due to the harassment and discrimination.

109. Plaintiff was damaged by Defendant's actions.

### Count VII
### Violation of the FMLA 29 U.S.C § 2601 *et seq*.

110. The preceding paragraphs are incorporated herein as if set forth at length.

111. Plaintiff worked for Defendant for more than one year prior to his need for FMLA leave.

112. Defendant employs more than 50 people.

113. Defendant was on notice Plaintiff needed leave, and such leave qualified for FMLA protection.

114. Defendant did not permit Plaintiff to use FMLA as required.

115. Plaintiff was damaged by Defendant's actions.

**Request for Relief**

WHEREFORE, Plaintiff respectfully requests that this Court enter judgment against the Defendants for the following:

a. Loss of back wages to date;

b. Front pay, where appropriate;

c. Other benefits of employment lost as a result of Defendant's unlawful conduct;

d. Compensatory, additional liquidated or punitive damages;

e. Plaintiffs' legal fees;

f. Court costs; and

g. Other such relief as the Court may deem just and proper.

**JURY TRIAL DEMANDED**

Respectfully Submitted,

Kayla Drum, Esq.
**KRAEMER, MANES & ASSOCIATES, LLC**
U.S. Steel Tower
600 Grant Street, Suite 4875
Pittsburgh, PA 15219
412.626.5594 (p)
412.637.9233 (f)
kd@lawkm.com